UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                   :

TIFFANY SHERELL THOMPSON,          :

                                   :

                   Plaintiff,     :       26-CV-02501 (JAV)

        -v-                      :

                                   :      <u>OPINION AND ORDER</u>

OPTUM, INC.,                   :

                                 :

                 Defendant.     :

                                 :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Defendant Optum, Inc. ("Optum") moves the Court to compel arbitration and stay this action. ECF No. 8 ("Motion"). Plaintiff Tiffany Sherell Thompson ("Thompson" or "Plaintiff") opposes this motion. ECF No. 15 ("Opp'n"). For the following reasons, the Motion is **GRANTED**.

**BACKGROUND**

**A.    Procedural History**

On June 23, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). ECF No. 10 ("Wood Decl."), Ex. A. On August 14, 2025, the EEOC issued Plaintiff a Determination and Notice of Rights. *Id.*, Ex. B.

On October 27, 2025, Plaintiff, proceeding *pro se*, commenced this action against Optum, Angela Furman, Patrick Conway, and Stephen Hemsley in the Supreme Court of the State of New York, County of New York, for alleged violations of the Americans with Disabilities Act ("ADA"); Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 290 *et seq. See* ECF No. 1 ("Not. of Removal"), Ex. A.  On February 2, 2026, Plaintiff filed an Amended Summons and Complaint against Defendant Optum in the state action, dropping her claims against the other defendants.  *Id.*, Ex. B ("Amended Complaint").  On March 26, 2026, Optum removed the action to this Court.  *See* Not. of Removal.

**B.    Underlying Agreements**

Optum, a wholly-owned subsidiary of UnitedHealth Group Incorporated ("UHG"), offered Plaintiff a position as a Billing Customer Service Representative in 2022.  ECF No. 11 ("Weedman Decl."), ¶¶ 2-3, 7.  UHG requires all new employees to electronically sign its Employment Arbitration Policy as part of its onboarding process.  *Id.*, ¶ 5; *e.g.*, *id.*, Ex. B ("Arbitration Agreement").

Plaintiff electronically signed the Arbitration Agreement on August 20, 2022.  Weedman Decl., ¶ 10; Arbitration Agreement at 8.  The Arbitration Agreement contains the following language:

> This Policy is a binding contract between UnitedHealth Group and its employee.  Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy.
> . . .
> Subject to the specific exclusions below, the claims covered by the Policy include, but are not limited to: . . . claims derived from or that are dependent on the employment relationship; claims that are derivative of or inextricably intertwined with any claims of the employee; . . . claims for discrimination and harassment; retaliation claims; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded below.

> . . .
> Covered claims also include any disputes regarding the
> Policy or any portion of the Policy or its interpretation,
> enforceability, applicability, unconscionability,
> arbitrability, waiver, or formation, or whether the Policy
> or any portion of the Policy is void or voidable, with the
> exception noted in the Class and Collective Actions
> Waivers section below.

Arbitration Agreement at 2-3 (emphasis omitted).  It excludes, *inter alia*, claims that may not be the subject of a mandatory arbitration agreement as provided by Section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), Section 8102 of the DoD Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.  *Id.* at 3. The Arbitration Agreement also provides that arbitration shall be conducted in accordance with the then-current Employment Arbitration Rules of the American Arbitration Association ("AAA Rules").  *See id.* at 3.  Under AAA Rule R-7(a), the arbitrator has the authority to determine the arbitrability of any claim.  American Arbitration Association, *Employment/Workplace Arbitration Rules and Mediation Procedures* (May 1, 2025), https://perma.cc/R923-GWUE.

Plaintiff contests that she signed the Arbitration Agreement voluntarily. According to Plaintiff's mother, Plaintiff underwent surgery on August 9, 2022, and was "in a physically weakened and drowsy condition as a result of her recent surgery" when she was "contacted by her supervisor" and "instructed to complete onboarding documents . . . immediately."  ECF No. 15-1 ("Gloria Thompson Decl."). Plaintiff's mother asserts that Plaintiff was "informed that [her] job opportunity

would [no longer] be available if the documents were not signed that same day." *Id.*

Plaintiff's mother further attests that Plaintiff would not have understood "any

arbitration agreement or other terms contained in the documents presented to her"

at that time. *Id.*

On September 2, 2022, Optum provided an official offer letter to Plaintiff

regarding her new position, which was scheduled to begin on October 10, 2022.

Weedman Decl., Ex. A ("Offer Letter").  The Offer Letter contains a provision

entitled, "Conditions of Your Employment with UnitedHealth Group," stating the

following:

> As a condition of your employment, you must agree to be
> bound by the terms of UnitedHealth Group's Employment
> Arbitration Policy, accessible <u>here</u>. The Arbitration Policy
> is a binding contract between you and UnitedHealth
> Group to resolve through arbitration all covered
> employment-related disputes that are based on a legal
> claim, and mutually waive the right to a trial before a
> judge or jury in court in favor of final and binding
> arbitration. By accepting employment with UnitedHealth
> Group, you agree to be bound by the terms of the
> Arbitration Policy.

*Id.* at 3.  The word "here" in this subsection, colored blue and underlined, embeds

the following hyperlink to the Arbitration Agreement:  https://cdn-static.findly.com/

wp-content/uploads/sites/1288/2020/11/Employment_Arbitration_Policy.pdf.  *Id.*

On October 13, 2022, Plaintiff electronically signed a Code of Conduct and

Employee Handbook Acknowledgment Form.  ECF No. 17 ("Suppl. Weedman

Decl."), ¶ 7; *id.*, Ex. A ("Acknowledgment Form").  The Acknowledgment Form

contains a section entitled "Employee Handbook," requiring the signatory to affirm

"responsib[ility] for reading the UnitedHealth Group Employee Handbook . . . promptly upon beginning employment with the Company."  Acknowledgment Form at 1.  Under its "At-Will Employment" section, the Acknowledgment Form also requires the signatory to affirm "that the provisions in the Employee Handbook are guidelines, and, *except for the provisions of the Employment Arbitration Policy*, do not establish a contract or any particular terms or conditions of employment between UnitedHealth Group and myself."  *Id.* (emphasis added).  After beginning her employment in October 2022, Plaintiff worked for Optum as a Billing Customer Service Representative until June 2025.  Weedman Decl., ¶ 15.

## LEGAL STANDARDS

Section two of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, establishes that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]"  9 U.S.C. § 2.  Any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order from the district court directing that "arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.

"The FAA reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up).  Indeed, the Supreme Court has held that courts must "rigorously" enforce arbitration agreements "according to their terms."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018)

(citation omitted); *accord AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  "In accordance with the 'strong federal policy favoring arbitration as an alternative means of dispute resolution,' a court must resolve any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'"  *DiTella v. TransUnion, LLC*, No. 23-CV-11028 (KPF), 2024 WL 3594567, at *4 (S.D.N.Y. July 31, 2024) (quoting *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)).

Courts consider two factors in determining whether a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue."  *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted).  If the answer to both of these questions is yes, then the court is required to compel arbitration and stay the action pending arbitration.  *See* 9 U.S.C. §§ 2, 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding.").

In deciding motions to compel arbitration, courts generally apply a similar standard to that applicable to a motion for summary judgment.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).  Courts must consider all relevant, admissible evidence submitted by the parties and draw all reasonable inferences in favor of the non-moving party.  *Id.*  "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*,

6

470 F.3d 471, 474 (2d Cir. 2006) (cleaned up).  Nevertheless, the "application of this different standard does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

## DISCUSSION

Optum contends that Plaintiff agreed to a binding Arbitration Agreement with the company that requires her to resolve all but her Title VII claims out of Court.  ECF No. 9 ("Mem.") at 4.  Plaintiff avers that the Court cannot enforce the Arbitration Agreement because it was presented to her with "pressure" and "urgency" during her medical recovery, preventing her from "knowingly" or "voluntarily" consenting.  Opp'n at 1.  The Court finds that Plaintiff consented to arbitrate her claims, apart from her Title VII claim, under the Arbitration Agreement.

## A.    Applicable Agreements to Arbitrate

The antecedent question of whether a valid arbitration agreement exists must be decided by the courts.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).  This question is "governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).  There is no dispute that New York law governs here.  *See* Mem. at 1.

It is a basic tenet of contract law that, in order to be binding, a contract requires a "meeting of the minds" and "a manifestation of mutual assent."  *Starke*, 913 F.3d at 288-89 (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of*

*Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999)).  "The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Id.* at 289.  "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements[.]"  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

"A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).  Plaintiff raises a contract formation defense to the validity of the Arbitration Agreement.  The Court interprets her appeals to her "physically weakened and drowsy condition" when asked to sign her onboarding documents, and the "pressure" she was under to sign quickly or risk losing her job opportunity, to assert economic duress, mental incapacity, and procedural unconscionability defenses to contract formation with respect to her purported consent to the Arbitration Agreement.  *See* Opp'n at 1; Gloria Thompson Decl.

Ultimately, however, whether Plaintiff initially consented to the Arbitration Agreement in August 2022 while she was recovering from surgery is inconsequential.  "A party may ratify a contract or release entered into under duress by intentionally accepting benefits under the contract[.]"  *Moise v. Fam. Dollar Stores of N.Y., Inc.*, No. 16-CV-6314 (RA), 2017 WL 2378193, at *4 (S.D.N.Y. June 1, 2017) (cleaned up).  Here, Plaintiff renewed her consent when she began her employment with Optum, thereby agreeing to be bound by the terms of the Offer

Letter she received on September 2, 2022.  Specifically, her Offer Letter informed Plaintiff that, by accepting the offer of employment, she "agree[d] to be bound by the terms of UnitedHealth Group's Employment Arbitration Policy," linked under the bolded heading: "Conditions of Your Employment with UnitedHealth Group."  Offer Letter at 3.  The Offer Letter put Plaintiff on "inquiry notice of [the] contract terms," as its arbitration requirements "were presented to [her] in a clear and conspicuous way."  *Starke*, 913 F.3d at 289.

Plaintiff also consented to the Arbitration Agreement when she subsequently signed the Acknowledgment Form on October 13, 2022, which required her to take "responsib[ility] for reading the UnitedHealth Group Employee Handbook," including its arbitration policy, "promptly upon beginning employment with the Company" and separately identified the provisions of the Employment Arbitration Policy as establishing a contract between UHG and the employee.  Acknowledgment Form at 1.  Whether Plaintiff remembers these instances today is inapposite.  *See, e.g., Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) ("A mere assertion that one does not *recall* signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated." (emphasis added)).

Plaintiff worked at Optum for three years after receiving notice that the Arbitration Agreement was a prerequisite of her employment.  Plaintiff "is thus deemed to have affirmed the agreement and cannot avoid the binding effects of its terms under the doctrine of economic duress or coercion."  *Moise*, 2017 WL 2378193,

9

at *4 (finding arbitration agreement valid where Plaintiff claimed he signed only under duress but continued working at company for three years thereafter without repudiating the agreement); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (holding the "take it or leave it" nature of arbitration provision "is not sufficient under New York law to render the arbitration provision procedurally unconscionable" (cleaned up)).

Plaintiff has failed to create a disputed issue of fact as to the validity of the Arbitration Agreement. The terms of the Arbitration Agreement are binding under Section 2 of the FAA.

## B.    Scope of the Agreements

"[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (collecting cases). "When a delegation clause exists, a court may not disturb the parties' delegation unless a party directly challenges the delegation clause itself." *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 297 (E.D.N.Y. 2024) (citing *Rent-A-Ctr.*, 561 U.S. at 71); *accord Paguay v. ESH Rest. Grp. LLC*, No. 23-CV-8434, 2024 WL 1376163, at *2 (S.D.N.Y. Apr. 1, 2024) ("If the arbitration agreement includes a clause that delegates decisions of arbitrability to the arbitrator, [a c]ourt should only intervene if the basis of the non-movant's challenge is directed specifically to enforceability of the delegation clause." (citing *Rent-A-Ctr.*, 561 U.S. at 71)). All

questions as to the Arbitration Agreement's scope are thus for the arbitrator to resolve.

**C.    Stay**

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding." *Smith*, 601 U.S. at 478.  Defendant seeks to stay not only Plaintiff's state law and ADA discrimination claims, which are subject to mandatory arbitration, but also her Title VII claim, which is not subject to arbitration.[1]  Mem. at 7-8.  Defendant contends that the Court should exercise its discretion to stay Plaintiff's Title VII claim because Plaintiff's arbitrable state law discrimination claims will hinge on the same facts.  *Id.*

"[W]hether or not the FAA requires a stay where some but not all claims are subject to mandatory arbitration, a district court may stay proceedings in its discretion." *Chang v. United Healthcare*, No. 19-CV-3529 (RA), 2020 WL 1140701, at *5 (S.D.N.Y. Mar. 9, 2020).  "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Id.* (collecting cases).  Accordingly, the Court elects to stay all of Plaintiff's claims.

---

[1] Companies that contract with the federal government in excess of $1,000,000 are prohibited from entering "into any agreement with any of its employees . . . that requires, as a condition of employment, that the employee . . . agree to resolve through arbitration any claim under Title VII of the Civil Rights Act of 1964." Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 8116(a)(1), 123 Stat. 3409, 3454 (2009); Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, § 8102(a)(1), 125 Stat. 38, 79 (2011).

11

## CONCLUSION

Defendant's motion to compel arbitration and stay this action is **GRANTED**. The Clerk of Court is directed to terminate ECF No. 8. As there is no reason to keep the case open pending the arbitration, the Clerk of Court is further directed to administratively close the case without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.

SO ORDERED.

Dated: June 1, 2026
        New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

12